WILLIAM F. FREEMAN, INC. v. ALDERMAN PHOTO COMPANY

No. 8718SC592

(Filed 1 March 1988)

1. **Contracts § 10; Landlord and Tenant § 8.2— lease provisions concerning insurance—no waiver of liability for negligence**

   Provisions of a lease which required both the lessor and lessee to insure their own property and required all insurance policies to include a waiver of subrogation against the other party did not constitute a waiver of liability for negligence. Therefore, the trial court erred in submitting to the jury an issue as to whether the parties intended such provisions to exempt defendant lessor from responsibility for damages suffered by plaintiff architecture firm when rain flooded plaintiff's leased premises while defendant was repairing the roof of the building.

2. **Damages § 17— destroyed architectural drawings—instructions on value**

   The trial court did not err in instructing the jury on the actual value rather than the replacement cost measure of damages for architectural drawings destroyed when rainwater entered plaintiff architectural firm's leased premises where the evidence tended to show that plaintiff would never use most of the drawings and those which might be reused could be redrawn when needed; the replacement cost measure of damages would compensate plaintiff for recreating hundreds of potentially useless drawings; and the trial court's instruction appropriately allowed the jury to consider the reasonableness and practicability of recreating the drawings in determining their actual value.

3. **Damages § 13.3— destroyed architectural drawings—value—amount of insurance**

   Evidence that plaintiff architectural firm maintained only $500 insurance coverage on drawings destroyed by rainwater leaking through the roof was relevant in determining the actual value of the drawings since no market existed for them.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 20 November 1986 in Superior Court, GUILFORD County. Heard in the Court of Appeals 3 December 1987.

Plaintiff, an architectural firm, rented office space from defendant. While defendant was repairing the roof of the building, heavy rain flooded plaintiff's office library damaging or destroying hundreds of architectural drawings, work papers and surveys. Several pieces of office equipment and furniture were also damaged. In addition to the property loss, plaintiff's business was interrupted for several weeks.

Plaintiff filed suit on 22 August 1984. Defendant filed its answer and a counterclaim for unpaid rent on 26 October 1984. Approximately two years later and only fourteen days before trial, defendant filed a motion for leave to amend its answer pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure. The amendment raised a new defense based on a lease provision which required both lessor and lessee to insure their own property. The lease also required all insurance policies to include a waiver of subrogation against the other party. The trial court granted defendant leave to amend over plaintiff's objection.

After almost two weeks of trial, the trial court submitted three issues to the jury: (1) whether plaintiff was damaged by defendant's negligence; (2) if defendant was negligent, what amount was plaintiff entitled to recover; and (3) did the parties intend certain lease language to mean that each party would insure its own property and not look to the other for damages. The trial court instructed the jury to consider the third issue in isolation without regard to or influence by the answers to the first two issues.

The jury found defendant was negligent and that plaintiff suffered losses totaling $113,600 ($73,600 attributed to personal property damages and $40,000 to business interruption). The jury found, however, that plaintiff was not entitled to any recovery from defendant because of their lease agreement. The trial court rendered judgment pursuant to the verdict and entered a directed verdict for $59,803.63 in favor of defendant on its counterclaim for unpaid rent.

Citing numerous objections and exceptions, plaintiff appeals from the judgment below.

*Frazier, Frazier & Mahler, by Harold C. Mahler and James D. McKinney, attorneys for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by William D. Caffrey and Clyde H. Jarrett and Fisher, Fisher, Gayle & Craig, by Scott C. Gayle, attorneys for defendant-appellee.*

ORR, Judge.

[1]   Plaintiff assigns as error the trial court's decision to submit Issue No. 3 to the jury. The issue reads as follows:

Did the parties intend that the language in their lease: "IN-SURANCE: The Lessor shall carry, pay the premium, and be responsible for fire and extended coverage insurance upon the premises. In the event any improvements or alterations are made by the Lessee as provided hereinafter, the amount of such insurance shall be increased, following receipt, by Lessor, of written notice from Lessee, to such an extent as to cover said improvements and alterations. Unless the additional insurance coverage is increased to cover any improvements and alterations as aforesaid, the Lessor shall not be responsible for the replacement or restoration in the event of other casualty.

The Lessee shall carry, pay the premiums, and be responsible for fire insurance and other insurance upon its property, contents and equipment and shall carry adequate and sufficient liability insurance for both the Lessee and Lessor and shall furnish the Lessor evidence of such coverage.

The Lessee will not do, suffer or permit anything to be done in or about the premises that will affect, impair or contravene any policies of insurance against the loss or damage by fire, casualty or otherwise that may be placed thereon by the Lessee or the Lessor.

All insurance policies shall be in the name of the Lessor and Lessee as their interests may appear. All insurance, whether carried by the Lessor or the Lessee, shall provide a waiver of subrogation against the other party," would mean that the Lessor, The Alderman Company, would insure its property and interests, and the Lessee, Freeman, Inc., would insure its property and interests, and, further, that one party would not be responsible for damage to or loss of the other party's property?

Defendant contends this language exempts both parties from liability arising out of their own negligence. We disagree. The above portions of the lease address insurance coverage and subrogation rights only. The lease does not contain an express waiver of liability for negligence.

Each party agreed to insure its own property and to include in all insurance policies, waivers of subrogation rights against the

other party. Subrogation is defined as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the . . . rights, remedies, or securities." Black's Law Dictionary 1279 (Rev. 5th Ed. 1979). "Subrogation is a normal incident of indemnity insurance, and, where the insurance contract is regarded as one of indemnity, the company on payment of the loss is subrogated to all of the rights of insured against the person whose fault or negligence caused the loss." 46 C.J.S. *Insurance* § 1209(a) (1946).

Appellee argues that one could infer from the above portions of the lease that the parties intended to waive personal liability for negligence and, therefore, a jury should resolve the issue. An inference, however, would be insufficient. In *Winkler v. Amusement Co.*, 238 N.C. 589, 79 S.E. 2d 185 (1953), our Supreme Court held that:

> [c]ontracts for exemption from liability for negligence are not favored by the law, and are strictly construed against the party asserting it. The contract will never be so interpreted in the absence of clear and explicit words that such was the intent of the parties.

238 N.C. at 596, 79 S.E. 2d at 190 (citations omitted). The lease contains no clear, explicit words waiving liability for negligence as required by *Winkler*. Therefore, the trial court should not have submitted Issue No. 3 to the jury.

[2]   We now address plaintiff's contention that the trial court erred by using North Carolina Pattern Civil Instruction 810.96 on actual value rather than the replacement cost measure of 810.94.

The trial court instructed the jury as follows:

> Now, ladies and gentlemen, where damage to personal property which has no market value, including documents and drawings, is involved, the rule is that if plaintiff is entitled to recover at all, it is entitled to recover what you find to be the actual value of that property immediately before it was damaged less any salvage value, if any, that you find it had after its damage.
>
> The actual value of any property is the property's intrinsic value, that is, its value to its owner.

In determining the actual value of such property, you may consider the age of the property, the degree to which such property has been [used] by the owner, the condition of the property just before and after it was damaged, the uniqueness of that property, the reasonableness and the practicability of recreating or replacing the property, the cost of recreating or replacing the property taking into account the degree to which it had been worn out with age, if any. And, finally, you may consider the opinion of its owner as to its value.

Plaintiff objects to the "actual value" measure of damages in the above instruction because it does not require the jury to award plaintiff a sum sufficient to recreate the drawings. The evidence, however, tended to show plaintiff would never use most of the drawings and those which might be used could be redrawn when needed. It would be unreasonable and impractical to recreate each drawing when most would never be used again.

The trial court's instruction was appropriate because it allowed the jury to consider the reasonableness and practicability of recreating the drawings in determining their actual value. Whereas the replacement cost measure of damages requested by plaintiff would compensate plaintiff for recreating hundreds of potentially useless drawings. We believe the trial court's instruction adequately permitted the jury to consider that some portion of the drawings might have to be recreated while most would not.

[3] Plaintiff further assigns as error the trial court's decision to admit testimony that plaintiff maintained only $500 insurance coverage on the drawings. According to plaintiff, this testimony was irrelevant and highly prejudicial. We disagree.

"Evidence of insurance coverage is generally inadmissible in negligence suits. . . . It is admissible, however, 'if it has some probative value other than to show the mere fact of its existence.'" *Shields v. Nationwide Mut. Fire Ins. Co.*, 61 N.C. App. 365, 380, 301 S.E. 2d 439, 448, *disc. rev. denied*, 308 N.C. 678, 304 S.E. 2d 759 (1983) (citations omitted). Here the insurance coverage was probative for a reason other than its mere existence. Since no market exists for the drawings, we believe the amount of insurance coverage was relevant in determining actual value and was properly admitted. It was for the jury to decide how

much weight the testimony deserved. We do not believe the probative value of this testimony was outweighed by prejudicial impact on the jury.

Finally, plaintiff contends the trial court erred by directing the verdict in favor of defendant for $59,803.63 on its counterclaim for unpaid rent.

The parties stipulated that plaintiff owed $70,325.00 in unpaid rent as of 30 June 1984. They also agreed the rent should be abated by $10,521.37 because of damage to the building. The difference between these two figures is $59,803.63, the amount of the judgment.

Plaintiff believes the trial court should have submitted the issue of abatement to the jury. According to plaintiff, the jury could have reduced the total amount of rent due even more by abating the rent during the time period after 30 June 1984. Plaintiff, however, presented no evidence of abatement after 30 June 1984. Thus, no material issue of fact remained to be resolved by the jury. The trial court properly entered a directed verdict in favor of defendant.

After thoroughly examining the remaining assignments of error we find them either without merit or harmless error. We therefore reverse the trial court's decision to submit Issue No. 3 to the jury and order the trial court to modify its judgment to award plaintiff $113,600. In all other respects the decision of the trial court is affirmed.

Modified and affirmed.

Judges ARNOLD and JOHNSON concur.