NANCY L. SHERA AND HERBERT K. SHERA, SR., PLAINTIFFS v. N.C. STATE
UNIVERSITY VETERINARY TEACHING HOSPITAL, DEFENDANT

No. COA11-1102

(Filed 21 February 2012)

**Tort Claims Act—veterinary malpractice—wrongful death—
replacement value damages for deceased companion ani-
mal—lost investment valuation method not recognized**

The Industrial Commission did not err in a Tort Claims Act
case by awarding plaintiffs damages based on the replacement
value, rather than intrinsic value, of their deceased companion
animal killed as a result of defendant's veterinary malpractice.
Plaintiffs' emotional bond with their pet was something that is
not recognized as compensable under North Carolina law, nor is
the lost investment valuation method.

Appeal by plaintiffs from opinion and award entered 13 June 2011
by the North Carolina Industrial Commission. Heard in the Court of
Appeals 24 January 2012.

*Gerber Animal Law Center, by Calley Gerber, for plaintiff
appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General
Olga Vysotskaya, for the State, defendant appellee.*

*Charlene Edwards Law Office, by Charlene Edwards, for
Amicus Curiae Animal Legal Defense Fund.*

*Jordan Price Wall Gray Jones & Carlton, by Jon P. Carr, for
Amicus Curiae North Carolina Veterinary Medical Association,
American Kennel Club, Cat Fanciers' Association, Animal
Health Institute, American Pet Products Association, Pet
Industry Joint Advisory Council, and American Veterinary
Medical Association.*

McCULLOUGH, Judge.

Plaintiffs Nancy L. Shera and Herbert K. Shera ("plaintiffs")
appeal from an opinion and award of the Full Commission awarding
plaintiffs damages based on the replacement value, rather than intrin-
sic value, of their deceased companion animal. We affirm.

## I.  Background

In August 1994, plaintiffs purchased a five-week-old female Jack Russell Terrier puppy and named her Laci. The purchase price for Laci was $100.00. In late 1994-1995, plaintiffs had Laci spayed so that she could not produce any offspring. Plaintiffs also took Laci to obedience training, which she completed successfully. Plaintiffs developed a sentimental attachment to Laci, stating that Laci had the ability to sense when plaintiffs were overloaded with stress and to comfort and calm them during those times.

In the spring of 2003, Laci was diagnosed with hepatocellular carcinoma, a type of liver cancer. Plaintiffs sought treatment from Veterinary Specialty Hospital ("VSH") in Cary, North Carolina, whose staff removed the tumor. Thereafter, plaintiffs sought treatment at the North Carolina State University Veterinary Teaching Hospital ("defendant"), who offered comprehensive oncology treatment. On 23 September 2003, Laci completed her cancer treatments, and by 7 October 2003, Laci's cancer was determined to be in remission.

In March 2007, Laci exhibited symptoms of poor appetite, vomiting, and difficulty with urination. On 31 March 2007, Laci was admitted to defendant for multi-systemic organ disease and multiple life-threatening symptoms, including a severe form of pancreatitis, ascites, electrolyte derangements, and other serious veterinary issues. Upon admission, Laci had exhibited trouble urinating, eating, and rising. On 1 April 2007, Laci was transferred to the intermediate care ward, where she underwent various tests and procedures until 5 April 2007, when she was moved to the intensive care unit for observation.

On 5 April 2007, defendant's staff determined that Laci required a nasoesophageal tube to assist with feeding. However, defendant's staff erroneously placed the feeding tube into Laci's trachea and lungs, instead of her esophagus and stomach. On the following morning, 6 April 2007, Laci went into cardiac arrest, and she did not respond to emergency medications or attempts at resuscitation. During defendant's internal review of the death, the improper placement of the feeding tube was discovered and determined to have been the proximate cause of Laci's death. Laci was 12 years and 9 months old at the time of her death. On 9 April 2007, defendant notified plaintiffs of the erroneous feeding tube placement which resulted in Laci's death.

On 11 May 2009, plaintiffs filed the present action against defendant with the North Carolina Industrial Commission ("the Commission") pursuant to the Tort Claims Act. In their complaint, plaintiffs alleged their beloved companion animal, Laci, was killed as a result of defendant's veterinary malpractice. Plaintiffs sought economic damages "representing the intrinsic value of Laci," as well as "the intrinsic value of the unique human-animal bond between Laci and [plaintiffs], borne from the time, labor, attention, and care given to Laci by [plaintiffs.]" Plaintiffs also sought reimbursement of the amounts paid by plaintiffs for defendant's veterinary services, mileage and other out-of-pocket expenses such as hotel lodging as a result of plaintiffs' travel associated with Laci's veterinary care, and cremation expenses. In addition, plaintiffs sought "noneconomic damages, including emotional distress and loss of enjoyment of life[.]" On 12 June 2009, defendant responded by filing a partial motion to dismiss and an answer, admitting negligence and requesting a hearing solely on the issue of damages.

The sole issue of damages was first heard by Deputy Commissioner George T. Glenn, II ("Deputy Commissioner Glenn"), on 23 August 2010. Defendant conceded the erroneous placement of the feeding tube at the hearing, and on 19 November 2010, Deputy Commissioner Glenn filed an opinion and award awarding damages to plaintiffs in the amount of $2,755.72. Plaintiffs appealed Deputy Commissioner Glenn's opinion and award to the Full Commission.

On 13 June 2011, the Commission filed its opinion and award, modifying Deputy Commissioner Glenn's opinion and award and awarding plaintiffs damages in the amount of $3,105.72. Included in the Commission's award is a reimbursement of the cost of Laci's treatment from 31 March 2007 through 6 April 2007 in the amount of $2,755.72 and the market value of Laci represented by the replacement cost of a Jack Russell Terrier dog in the amount of $350.00. In its conclusions of law, the Commission declined to expand the intrinsic value category of damages by applying it to the loss of a pet animal in the present case. Plaintiffs timely appealed the Commission's opinion and award to this Court on 4 July 2011.

## II.  Standard of Review

"Under the Tort Claims Act, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclu-

sions of law and decision." *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 97, 576 S.E.2d 345, 349 (2003) (internal quotation marks and citations omitted); *see also* N.C. Gen. Stat. § 143-293 (2011). Most pertinent to this appeal, "[w]e review the Full Commission's conclusions of law *de novo*." *Holloway v. N.C. Dep't of Crime Control & Pub. Safety*, 197 N.C. App. 165, 169, 676 S.E.2d 573, 576 (2009).

### III. Discussion

Both plaintiffs and defendant agree that under North Carolina law, companion animals, specifically dogs, are considered "species of property." *Jones v. Craddock*, 210 N.C. 429, 431, 187 S.E. 558, 559 (1936). As such, our Courts have long held that a civil action for the negligent injury to or loss of a dog is maintainable. *E.g., id.* ("Even in the days of Blackstone, while it was declared that property in a dog was 'base property,' it was nevertheless asserted that such property was sufficient to maintain a civil action for its loss.").

In *Carolina Power & Light Co. v. Paul*, 261 N.C. 710, 136 S.E.2d 103 (1964), our Supreme Court announced that "North Carolina is committed to the general rule that the measure of damages for injury to personal property is the difference between the market value of the damaged property immediately before and immediately after the injury." *Id.* at 710-11, 136 S.E.2d at 104. In cases where the personal property at issue "is not commonly traded and has no ascertainable market value, a jury may infer the market value of the . . . property from evidence of the replacement cost." *State v. Helms*, 107 N.C. App. 237, 240, 418 S.E.2d 832, 833 (1992). In the present case, the Commission adhered to these well-established legal principles, which are undisputed by both plaintiffs and defendant.

Here, the Full Commission concluded that North Carolina law treats companion animals as personal property and uses the difference in market value as the measure of damages for injury to personal property in negligence actions. The Commission also concluded that plaintiffs' pet dog is not easily subjected to the standard diminished market valuation and therefore, because the item has no ascertainable market value, the market value of plaintiffs' pet dog may be determined based on evidence of the replacement cost of the item. Based on these conclusions, the Commission arrived at the replacement value of plaintiffs' deceased pet, a Jack Russell Terrier dog, based on the evidence presented at the hearing, and awarded that amount to plaintiffs as compensatory damages. The Commission acknowledged that our Courts have recognized an alternative intrin-

sic value measure of damages that may be appropriate under certain circumstances, but the Commission concluded "the courts have not recognized intrinsic value as the proper measure for damages for the loss of an animal" and declined "to expand the intrinsic value category of damages by applying it to the instant case."

On appeal, plaintiffs challenge only the Commission's conclusion of law declining to apply an intrinsic valuation method to compensate plaintiffs for the negligently caused death of their pet. Plaintiffs argue that in a case such as this, where the injured or destroyed "property" is a companion animal, such as their beloved pet dog, the market value measure of damages is "inapt." Specifically, plaintiffs argue there exists no "market" for adult spayed or neutered companion animals in our society. In addition, plaintiffs argue that the replacement value of a companion animal is not an adequate measure of the loss given the unique nature of the human-animal bond formed between pet owners and their pets. Rather, plaintiffs argue that because companion animals are "sentient beings," a "unique" and special kind of personal property, the measure of damages in a negligence case involving the loss of a companion animal should be the "actual" or "intrinsic" value of the animal. Plaintiffs contend this type of damages has been recognized under our law, as the Commission acknowledged, and that companion animals, in particular plaintiffs' dog Laci, qualify for this type of valuation. Accordingly, plaintiffs contend the Commission erred in not applying the actual or intrinsic value measure in the present case.

Plaintiffs cite the case of *Freeman, Inc. v. Alderman Photo Co.*, 89 N.C. App. 73, 365 S.E.2d 183 (1988), in support of their contention that actual or intrinsic value as a measure of damages in negligence cases has been recognized under North Carolina law. In *Freeman*, the plaintiff, an architectural firm renting office space from the defendant, lost hundreds of architectural drawings, work papers, and surveys as a result of the defendant's negligent repairing of the building roof. *Id.* at 73, 365 S.E.2d at 184. At trial, the evidence showed most of the lost drawings would never be used, so the trial court instructed the jury on the property's "actual" or "intrinsic value, that is, its value to its owner," rather than the property's replacement value, as to the measure of damages. *Id.* at 76-77, 365 S.E.2d at 185-86. This Court upheld the trial court's "actual value" instruction, which allowed the jury to consider the evidence that many of the lost drawings were useless and did not warrant replacement. *Id.* at 77, 365 S.E.2d at 186. Thus, the "actual value" instruction in *Freeman* was applied to limit,

rather than enhance, the plaintiff's recovery by preventing a windfall to the plaintiff in the form of compensation for useless property.

Despite its limiting application in *Freeman*, plaintiffs steadfastly argue that companion animals warrant the same actual value instruction on damages, as enunciated in *Freeman* and set forth currently under North Carolina's Civil Pattern Jury Instruction 810.66. Plaintiffs contend that when the evidence in the case of a negligently destroyed companion animal meets the criteria of N.C.P.I. Civil 810.66 (gen. civ. vol. 2000), that measure of damages should be applied. N.C.P.I. Civil 810.66 instructs that actual or intrinsic value should be used "where damages measured by market value would not adequately compensate the plaintiff and repair or replacement would be impossible . . . or economically wasteful . . . [,]" as was the case in *Freeman*. *Id.* N.C.P.I. Civil 810.66 then lists several factors to be considered by the fact finder in determining the "actual value" of a plaintiff's property, including, in relevant part, the original cost of the property, the age of the property, the condition of the property just before it was damaged, the uniqueness of the property, the cost of replacing the property, the opinion of the plaintiff as to its value, the opinion of any experts as to its value, and any other factors supported by the evidence. *Id.* Nonetheless, N.C.P.I. Civil 810.66 dictates that the fact finder must not consider "any fanciful, irrational or *purely emotional* value" that the specific property may have had. *Id.* (emphasis added).

Here, plaintiffs argue the uncontroverted evidence produced at the hearing showed the irreplaceable uniqueness of Laci, thereby warranting the application of the actual value measure of damages. In their arguments on appeal, plaintiffs stress Laci served a "therapeutic" purpose to her owners and was vital to Mr. Shera's heart condition therapy, which is simply not replaceable by purchasing another Jack Russell Terrier dog. Accordingly, plaintiffs argue that because the evidence meets the criteria for the application of N.C.P.I. Civil 810.66, the Commission should have applied the actual value measure of damages and considered the additional factors. Despite these arguments on appeal, however, the uncontroverted evidence produced at the hearing does not establish any particular "therapeutic" purpose served by Laci, and the Commission made no such finding of fact. Rather, plaintiffs' testimony at the hearing continuously reflects the understandable emotional and sentimental connection plaintiffs had formed with their pet:

**SHERA v. N.C. STATE UNIV. VETERINARY TEACHING HOSP.**

[219 N.C. App. 117 (2012)]

Q. Can you tell us what your life was like with Laci?

[Mrs. Shera]. Laci was a family member. She brought so much joy to our home. My husband is a heart patient, and she brought him such comfort. And if you know anything about that, that is one of the things that a beloved pet can do. They can calm the situation down, help a person. Laci was just very special. She was very, very special to the whole family.

. . . .

Q. Were there any special tasks that Laci performed for you?

[Mrs. Shera]. Like I said, she was just very helpful in stressful situations. . . .

Q. Did she perform any special tasks for you?

[Mrs. Shera]. Yes. Laci was my best friend. She was my absolute best friend.

Q. When you say "best friend," . . . what did she do for you?

[Mrs. Shera]. She was a great comfort to me.

. . . .

[Mrs. Shera]. . . . Laci was unique. Laci was unique. She had her own personality. She fit into the family right away and just had her own special way about her.

. . . .

[Mrs. Shera]. Laci was strong. Laci was intuitive. She was very intelligent. She knew when there was stress in the house with my husband's health situations, and she was an aide in that respect.

Q. When you say "she was an aide," what would she do?

[Mrs. Shera]. She would calm the situation down.

Q. How did she do that?

[Mrs. Shera]. She would go to [Herb], she would go to me, and she would just try to keep everything calm.

. . . .

Q. Has your life changed as a result of losing Laci?

[Mrs. Shera]. There's a big void, and it's the way it happened. . . . She was that special, needed, loved, cherished, and it's just a big void.

. . . .

Q. Did [Laci] perform any special tasks for you?

[Mr. Shera]. She was very calming. It's been mentioned before I've got coronary problems ongoing, currently being treated for them, and she was very calming—a calming influence on me. When she was around, I was comfortable. I was calm, didn't worry about things, and she just—you know, she'd come and sit on the couch with you. She was just a loving companion.

. . . .

Q. Was there any market value for Laci?

[Mr. Shera]. You can't put a value on a child. No, it's impossible. There was only one Laci. There's only one dog that went through all she went through with flying colors. How can you put a value on that?

Thus, the evidence does not reveal why the specific *item of property* at issue—plaintiffs' pet dog—is not replaceable. The testimony reveals no absolute unique tasks or functions that Laci performed for plaintiffs, aside from her calming presence, that could not be performed by another pet dog. Rather, the substance of the testimony supports only the fact that plaintiffs' *emotional bond* with their pet is irreplaceable—something that is not recognized as compensable under our law, and in particular N.C.P.I. Civil 810.66, which plaintiffs seek to apply here. Although plaintiffs point to the "purely academic" discussion of whether "the sentimental value of property" may be recovered as compensation for a defendant's tortious act in our Supreme Court's decision in *Thomason v. Hackney*, 159 N.C. 298, 303-05, 74 S.E. 1022, 1024-25 (1912), our case law has been consistent in denying recovery for sentimental value of negligently lost or destroyed personal property, as reflected in N.C.P.I. Civil 810.66. *Cf. City of Kings Mountain v. Cline*, 19 N.C. App. 9, 13, 198 S.E.2d 64, 67 (1973) ("[S]entimental value[] is not such value as will support a monetary compensation.").

Despite the overwhelming sentimental nature of plaintiffs' testimony at the hearing, plaintiffs point to the amount of money they invested in Laci's care throughout her lifetime as objective evidence

of Laci's actual value to them as owners. Relying on this evidence as the measure of Laci's actual value, plaintiffs seek damages in excess of $28,000.00 for the negligent loss of their pet dog. However, plaintiffs fail to adequately explain how amounts spent on the dog's care prior to 31 March 2007, when Laci was admitted to defendant's care and negligently killed, were proximately related in any way to defendant's negligent act on 6 April 2007 and plaintiffs' resulting injury. In fact, the evidence shows Laci was successfully treated for cancer in 2003-2004 by both VSH and defendant, and plaintiffs testified at the hearing that the amounts they expended on Laci's oncology treatment was worth it for "every extra minute" they were able to spend with their pet thereafter. We fail to see how such expenditures prior to defendant's negligent acts can be considered in any way in a damages award, regardless of the valuation method employed. Notably, were this an action for the wrongful death of a child, plaintiffs could recover only the "[e]xpenses for care, treatment and hospitalization *incident to the injury resulting in death*," rather than the cost of medical care expended over the child's lifetime. N.C. Gen. Stat. § 28A-18-2 (2011) (emphasis added). North Carolina law has not yet recognized a lost investment valuation method in wrongful death cases, whether human child or pet animal. *Cf. Wycko v. Gnodtke*, 361 Mich. 331, 339-40, 105 N.W.2d 118, 122-23 (1960).

Our review of the record, therefore, reveals no definitive evidence to support the application of an actual or intrinsic value measure of damages in this case, were we to conclude that our law permits such measure of damages in cases of negligent loss of companion animals. Our research reveals that *Freeman* is the only decision in our State upholding the application of an actual or intrinsic value measure of damages, despite the availability of such measure in appropriate circumstances. *Cf. Blum v. Worley*, 121 N.C. App. 166, 169, 465 S.E.2d 16, 19 (1995) (stating instructions on damage to "intrinsic value" of land are appropriate "in certain circumstances" where evidence supports such an instruction). Indeed, evidence that is "purely speculative or conjectural" or "too ephemeral," in addition to being purely sentimental as we have already noted, cannot support such an instruction. *Id.* at 170, 465 S.E.2d at 19. We note similar limitations are placed on damages awards in wrongful death actions as well. *See, e.g., Bailey v. Gitt*, 135 N.C. App. 119, 121, 518 S.E.2d 794, 795 (1999) ("[C]laims for certain kinds of damages [in a wrongful death action] can be dismissed by the trial court as too speculative.").

The current law in North Carolina is clear that the market value measure of damages applies in cases involving the negligent destruction of personal property, whether sentient or not. Although the actual value measure of damages exists under our law, such damages awards have proven to be the rare exception and have never been applied to either enhance a damages award or to the recovery of damages for the loss of companion animals. This is surely due in part to the fact that a multitude of companion animals are available in our society, and although the replacement of the unique human-animal bond between an owner and his or her pet is impossible, replacement of the type of property—a companion animal—currently is possible under our law. Although "[t]he measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost *as far as it may be done by compensation in money*[,]" *Belcher v. Fleetwood Enters., Inc.*, 162 N.C. App. 80, 85, 590 S.E.2d 15, 19 (2004) (emphasis added) (internal quotation marks and citations omitted), the sentimental bond between a human and his or her pet companion can neither be quantified in monetary terms or compensated for under our current law. Plaintiffs recognize this fact in both their testimony and their brief, and the evidence presented to the Commission in the present case, consisting entirely of plaintiffs' own testimony and past veterinary bills, does not support plaintiffs' argument that the actual or intrinsic value measure of damages, as exists currently under our law, is applicable in the present case. Thus, while we recognize, as we have in past cases, that there exists an actual or intrinsic value measure of damages under our law, were we to apply an actual or intrinsic value measure of damages in the case of companion animals to compensate owners for the value of their emotional bond with their pet, as the facts of this case present, we would in effect be expanding that category of damages beyond what is currently recognized under our law, as the Commission properly concluded here.

We sincerely empathize with plaintiffs' loss of their beloved pet Laci. Unfortunately for plaintiffs, however, this Court is not in the position to expand the law. Rather, such considerations must be presented to our Supreme Court or our Legislature, who have the power to rectify any inequities in both the labeling of companion animals as mere property and the current market valuation of companion animals in negligence cases. Certainly the numerous policy considerations presented by the issue raised in this case—how to value the loss of the human-animal bond between a pet owner and his or her

ORANGE CNTY. v. TOWN OF HILLSBOROUGH

[219 N.C. App. 127 (2012)]

companion animal—is more appropriately addressed to our Legislature. This Court is an error-correcting court, not a law-making court. Here, as stated previously, the Commission did not err in its reasoning or its conclusions of law as to the proper measure of damages for plaintiffs' pet dog under our current negligence laws. Accordingly, we must affirm the Commission's opinion and award.

Affirmed.

Judges HUNTER (Robert C.) and THIGPEN concur.