IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1259

 Filed: 5 November 2019

New Hanover County, No. 17-CVS-573

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDER OF
THE SAMI II INC. BEAR STEARNS ARM TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-12, Plaintiff,

 v.

ESTATE OF JOHN G. WOOD, III a/k/a JOHN G. WOOD, JR., ANNETTE F. WOOD,
EDWARD W. WOOD, and MARY G. WOOD, Defendants.

 Appeal by Defendant Mary Wood from orders entered 1 May 2018 and 6 June

2018 by Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the

Court of Appeals 9 May 2019.

 Manning Fulton & Skinner P.A., by Robert S. Shields, Jr., for Plaintiff-
 Appellee.

 Law Office of Susan M. Keelin, PLLC, by Susan M. Keelin, for Defendant-
 Appellant.

 COLLINS, Judge.

 Mary Wood (“Defendant”) appeals from (1) an order granting U.S. Bank

National Association, as Trustee for the Holder of the SAMI II Inc. Bear Stearns Arm

Trust, Mortgage Pass-Through Certificates, Series 2005-12’s (“Plaintiff”) and denying

Defendant’s motions for summary judgment made pursuant to North Carolina Rule

of Civil Procedure 56, and (2) an order granting in part and denying in part
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

Defendant’s motion for amended findings of fact and an amended order made

pursuant to North Carolina Rule of Civil Procedure 52. Defendant contends that the

trial court erred by granting Plaintiff summary judgment, and by making various

findings of fact and conclusions of law that were unsupported by the evidence and

erroneous. We dismiss in part and reverse and remand in part.

 I. Background

 In April 2005, John Wood agreed to purchase real property in Wilmington from

Barbara Buchanan for $878,000. In connection with the contemplated transaction,

Alpha Mortgage Corporation (“Alpha”) agreed to loan John Wood $650,000.

According to the closing attorney, Alpha conditioned the loan upon (1) the loan being

used to pay off an existing lien on the property allegedly held by one of Buchanan’s

creditors1 and (2) the execution of a deed of trust on the property that would give

Alpha a first-lien security interest therein. In his opinion on title, the closing

attorney averred that he represented to Alpha that those conditions would be met,

and that Alpha would have a first-lien security interest in the entire property.

 Closing took place on 17 June 2005. On that date: (1) according to the closing

attorney, Alpha made the $650,000 loan to John Wood, and the loan proceeds were

applied to pay off the existing lien on the property; (2) John Wood executed a

promissory note to Alpha for $650,000 (the “Note”); (3) Buchanan recorded a General

 1 No documentary evidence regarding any prior lien on the property is reflected in the record.

 2
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

Warranty Deed in the New Hanover County Register of Deeds that transferred

ownership of the property to John Wood, Annette Wood, Edward Wood, and

Defendant; and (4) John Wood and Annette Wood executed a Deed of Trust giving

Alpha a security interest in the property, but Edward Wood and Defendant did not.

 According to the closing attorney, the Deed of Trust should have been executed

by all four subsequent owners of the property, but was executed only by John and

Annette Wood due to an error on the attorney’s part. As a result, Edward Wood and

Defendant took their one-half combined interest in the property unencumbered by

any security interest. In December 2008, the Note went into default, and Plaintiff

instituted foreclosure proceedings on the property. The foreclosure proceedings were

dismissed as inactive in July 2012.

 John Wood died in December 2015, and Edward Wood quitclaimed his interest

in the property to Defendant in 2016 following their divorce, leaving Annette Wood

and Defendant each holding a one-half undivided interest in the property.

 On 14 February 2017, Plaintiff filed a verified complaint in New Hanover

County Superior Court seeking, inter alia, a declaratory judgment quieting title to

the property pursuant to N.C. Gen. Stat. §§ 1-254 and 41-10. Plaintiff filed an

amended complaint on 24 April 2017.

 On 5 June 2017, Defendant filed an answer in which she generally and

specifically denied the allegations of the amended complaint, raised a number of

affirmative defenses (including the affirmative defense of laches), made a number of

 3
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

counterclaims, and moved to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule

12(b)(6). On 27 July 2017, Plaintiff replied to Defendant’s motion to dismiss and

moved to dismiss Defendant’s counterclaims pursuant to Rule 12(b)(6). On 19 March

2018, Plaintiff moved for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule

56. Defendant then moved for summary judgment pursuant to Rule 56 on 13 April

2018, and on 16 April 2018 moved for sanctions pursuant to N.C. Gen. Stat. § 1A-1,

Rule 37.

 On 1 May 2018, the trial court entered an order (1) granting Plaintiff summary

judgment on its claim to quiet title to the property under a theory of equitable

subrogation, (2) granting Defendant summary judgment as to Plaintiff’s other claims,

and (3) granting Plaintiff summary judgment as to Defendant’s counterclaims. On

10 May 2018, the trial court entered an order which denied Defendant’s motion for

sanctions but compelled Plaintiff to provide all documents responsive to Defendant’s

request for production within 30 days.

 On 14 May 2018, Defendant filed a motion for amended and additional findings

of fact and for an amended order pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(b),

essentially asking the trial court to reverse itself and grant summary judgment for

Defendant on Plaintiff’s claim to quiet title, and asking the court to amend its findings

of fact and conclusions of law in the 1 May 2018 order.

 On 6 June 2018, the trial court entered an order on Defendant’s Rule 52

motion, noting that “[i]n the interest of clarity” it would make certain additional

 4
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

findings of fact and conclusions of law, but otherwise denied Defendant’s motion,

reiterating its ultimate conclusion that it discerned no genuine issues of material fact

as to the various claims before it and that the litigants were accordingly entitled to

summary judgment as set forth in the 1 May 2018 order.

 Defendant timely appealed both the 1 May 2018 and 6 June 2018 orders.

 II. Discussion

 a. Appellate Jurisdiction

 As a threshold matter, Defendant’s appeal of the 6 June 2018 order and all but

one of Defendant’s issues presented ask this Court to conduct irrelevant analysis.

 Defendant’s Rule 52 motion was a request for the trial court to amend its

findings of fact and conclusions of law in its 1 May 2018 order granting and denying

the parties’ competing motions for summary judgment. Likewise, in its second, third,

and fourth issues presented, Defendant posits as issues for our review the questions

of whether the trial court made erroneous findings of fact and conclusions of law in

its two orders. But since this Court reviews a trial court’s order granting or denying

summary judgment de novo, Variety Wholesalers, Inc. v. Salem Logistics Traffic

Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012), we are to disregard all

but the trial court’s ultimate decision to grant or deny summary judgment for

purposes of our review. See Hummer v. Pulley, Watson, King & Lischer, P.A., 140

N.C. App. 270, 278, 536 S.E.2d 349, 354 (2000) (“A trial judge is not required to make

findings of fact and conclusions of law in determining a motion for summary

 5
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

judgment, and if he does make some, they are disregarded on appeal.” (citation

omitted)); State v. Price, 233 N.C. App. 386, 394, 757 S.E.2d 309, 315 (2014)

(“Immaterial findings of fact are to be disregarded.” (quotation marks and citation

omitted)).

 Thus, Defendant’s appeal of the 6 June 2018 order and its second, third, and

fourth issues presented all ask this Court to weigh irrelevant matters, and are

accordingly dismissed. However, Defendant properly appealed whether Plaintiff was

entitled to summary judgment on its claim to quiet title, which the trial court granted

based upon the doctrine of equitable subrogation, and we will analyze that issue.

 b. Standard of Review

 Summary judgment is proper “if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a

judgment as a matter of law.” N.C. Gen. Stat. § 1A-1, Rule 56 (2018). “[T]he party

moving for summary judgment ultimately has the burden of establishing the lack of

any triable issue of fact[,]” Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488,

491, 329 S.E.2d 350, 353 (1985), and the evidence is viewed “in a light most favorable

to the nonmoving party.” Hamby v. Profile Prods., LLC, 197 N.C. App. 99, 105, 676

S.E.2d 594, 599 (2009) (quotation marks and citation omitted). We review an order

granting or denying summary judgment de novo. Variety Wholesalers, 365 N.C. at

523, 723 S.E.2d at 747.

 6
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

 c. Standing

 To establish standing to bring an action to quiet title under N.C. Gen. Stat.

§ 41-10, a plaintiff must show that the “plaintiff [] own[s] the land in controversy, or

ha[s] some estate or interest in it[,]” and that “the defendant [] assert[s] some claim

to such land adverse to the plaintiff’s title, estate or interest.” Wells v. Clayton, 236

N.C. 102, 107, 72 S.E.2d 16, 20 (1952).

 Defendant argues at length that Plaintiff’s failure to provide a materially-

complete copy of the Note2 showing that Plaintiff is the holder of the Note dooms its

claim to standing. But Defendant cites to no authority standing for the proposition

that a plaintiff’s failure to show that it was the holder of a promissory note executed

along with a deed of trust in a real-estate transaction is fatal to the plaintiff’s

 2 At the hearing on the parties’ competing motions for summary judgment, Plaintiff provided
the trial court with a document that Plaintiff represents is a “complete copy of the note[,]” which
appears to reflect certain endorsements that are not reflected on the copy of the Note attached to the
verified complaint.

 We agree with Defendant that the copy of the Note attached to the verified complaint does not
show any endorsement by Alpha to any other party, and is therefore insufficient standing alone to
show that another party was the holder of the Note. We also grant Defendant’s 27 March 2019 motion
to strike the purported “complete copy of the note” because it is an unverified document that is not
properly considered in ruling on a motion for summary judgment. N.C. Gen. Stat. § 1A-1, Rule 56(e)
(“Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached
thereto or served therewith”); First Citizens Bank & Trust Co. v. Northwestern Ins. Co., 44 N.C. App.
414, 420, 261 S.E.2d 242, 246 (1980) (holding that the trial court erred by considering unsworn
documents on a motion for summary judgment); cf. Precision Fabrics Group, Inc. v. Transformer Sales
& Serv., Inc., 120 N.C. App. 866, 869, 463 S.E.2d 787, 789-90 (1995) (citing Rule 56(e) in noting that a
document offered by a party for purposes of summary judgment “is admissible if properly
authenticated” but holding that “[i]n this case [the document offered] was not properly authenticated
and thus properly excluded by the trial court.”), rev’d on other grounds, 344 N.C. 713 (1996).

 7
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

standing to sue to quiet title to the property allegedly covered by the deed of trust,

particularly where the plaintiff establishes it is the real party in interest under the

deed of trust.

 Plaintiff attached the Deed of Trust executed by John and Annette Wood to its

verified and amended complaints,3 which shows Alpha’s security interest in the half

of the property owned by John and Annette Wood that Plaintiff alleges should have

covered the entire property. Plaintiff also alleged that (1) Alpha assigned the Deed

of Trust to Plaintiff in 2012, citing to the entry in the New Hanover County Register

of Deeds that reflects the assignment to Plaintiff of the Deed of Trust “together with

the note(s) and obligation therein described[,]”4 and (2) Defendant has claimed that

it owns half of the property free and clear of Plaintiff’s asserted lien.

 We accordingly conclude that Plaintiff sufficiently pled standing to sue to quiet

title to the property.

 d. Equitable Subrogation

 3 The fact that the original verified complaint was superseded by the amended complaint does
not render the attachments thereto unverified, and we treat the verified complaint as an affidavit such
that the documents attached thereto may be considered for purposes of ruling on a motion for summary
judgment. See Page v. Sloan, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) (“A verified complaint
may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would
be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the
matters stated therein.”).

 4 See Restatement (Third) of Property: Mortgages § 5.4(b) (1997) (“Except as otherwise
required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the
mortgage secures unless the parties to the transfer agree otherwise.”).

 8
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

 Plaintiff argued at the hearing on the parties’ competing motions for summary

judgment that it seeks to quiet title to the property under a theory of equitable

subrogation.

 The doctrine of equitable subrogation is described as follows:

 [A]s a general rule one who furnishes money for the
 purpose of paying off an encumbrance on real or personal
 property, at the instance either of the owner of the property
 or of the holder of the encumbrance, either upon the
 express understanding or under circumstances from which
 an understanding will be implied, that the advance made
 is to be secured by a first lien on the property, will be
 subrogated to the rights of the prior lienholder as against
 the holder of an intervening lien, of which the lender was
 excusably ignorant. . . . In order to invoke the equitable
 remedy of subrogation it is necessary both that the money
 should have been advanced for the purpose of discharging
 the prior encumbrance, and that it should actually have
 been so applied.

Peek v. Wachovia Bank & Trust Co., 242 N.C. 1, 15-16, 86 S.E.2d 745, 755-56 (1955)

(internal quotation marks and citations omitted).

 The amended complaint alleges that (1) “[a]n express condition of the $650,000

loan made by the Plaintiff to the Defendants to enable them to purchase the property,

[was that] the Defendants agreed that the Plaintiff would be granted a deed of trust

for the entire property securing their loan[,]” (2) “[t]he proceeds from [Alpha]’s loan

to John Wood and Annette Wood were to be used for the purchase of the Property” as

described in Plaintiff’s Exhibit D, and (3) “[t]he proceeds . . . were used to pay off and

release a first mortgage on the property to First Horizons in the amount [of]

 9
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

$515,732.80.” Plaintiff’s Exhibit D, a U.S. Department of Housing and Urban

Development Settlement Statement executed by John Wood and Barbara Buchanan,

reflects that $515,732.80 was applied at closing for “[p]ayoff of first mortgage loan[:]

First Horizons[,]” which is corroborated by the closing attorney’s affidavit that he

used the funds to pay off the purported prior mortgage. Defendant denied all of these

allegations in her answer.

 The trial court ruled that Plaintiff established that there exist no genuine

issues of material fact and that Plaintiff is entitled to quiet title to the property via

the doctrine of equitable subrogation as a matter of law. In her brief on appeal,

Defendant argues that the doctrine of equitable subrogation is unavailable to

Plaintiff because Alpha, Plaintiff’s predecessor-in-interest, did not furnish money to

extinguish any debt owed by John Wood, the borrower, but rather to extinguish the

debt owed by Buchanan, the owner of the real property Alpha’s money was used to

purchase. In essence, Defendant argues that equitable subrogation cannot apply

unless the lender is providing money to a borrower to extinguish a prior debt owed

by that borrower, e.g., in a refinancing transaction.

 Neither of the parties cite to any controlling authority expressly holding that

equitable subrogation is or is not available to a lender who has furnished money to

the purchaser of real property on the condition that (1) the money be used to

extinguish debt owed by the seller of the property so that (2) the lender gains a first-

 10
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

position lien over the property, and we are aware of no such authority. We are

persuaded, however, that equitable subrogation can apply in such a context.

 Equitable subrogation is a creature of equity whose “basis is the doing of

complete, essential, and perfect justice between all the parties without regard to form,

and its object is the prevention of injustice.” Journal Publ’g Co. v. Barber, 165 N.C.

478, 487-88, 81 S.E. 694, 698 (1914) (emphasis added). While distinguishable in that

it concerned a refinancing transaction, our decision in Bank of N.Y. Mellon instructs

that where a lender furnishes money on the condition that it be used to give the lender

a first-position lien over a parcel of real property but an attorney’s error causes the

defendant to receive title to a fraction of the parcel unencumbered by the lender’s

lien, the defendant may be subjected to the anticipated lien via equitable subrogation.

Bank of N.Y. Mellon v. Withers, 240 N.C. App. 300, 303, 771 S.E.2d 762, 765 (2015).

And while not controlling, we agree with many of our sister states, as well as with

federal courts applying North Carolina law, that have held that equitable subrogation

is not limited to the context of refinancings and can apply in the context of purchase

transactions such as the transaction here at issue. See, e.g., Gibson v. Neu, 867

N.E.2d 188, 200 (Ind. Ct. App. 2007) (“we must disagree that equitable subrogation

applies only in refinance situations”); Sourcecorp, Inc. v. Norcutt, 258 P.3d 281, 288

(Ariz. Ct. App. 2011) (“equitable subrogation should not be precluded on the basis

that the party seeking subrogation is a purchaser of property who has paid the

existing encumbrance in connection with the purchase”); In re Project Homestead,

 11
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

Inc., 374 B.R. 193, 208 (Bankr. M.D.N.C. 2007) (“The Trustee also argues that

equitable subrogation is not available in these proceedings because the borrowed

funds were not used to pay an obligation of the borrowers (i.e., the Purchasers), but

instead were used to pay obligations of the Debtor. Neither Peek nor the other North

Carolina decisions involving equitable subrogation support such a limitation. . . .

Although not strictly a refinancing, this is precisely the type of situation that, under

the broad equitable principles recognized in the North Carolina cases, the remedy of

equitable subrogation may be invoked by the new lender in order to claim the rights

formerly held by the old lender under the old lender’s deed of trust.”).

 We therefore hold that the doctrine of equitable subrogation can apply in the

context of a purchase transaction, and conclude that the trial court did not commit

an error of law by denying Defendant summary judgment. Our holding should not

be construed as a ruling that Plaintiff has established that it is entitled to be

equitably subrogated in this case. As explained below, we conclude that summary

judgment was improperly granted by the trial court. At trial, Plaintiff must convince

the factfinder that it falls within the ambit of Peek and other decisions setting forth

what a plaintiff must prove in order to avail itself of the doctrine of equitable

subrogation.

 e. Laches

 Defendant raised the affirmative defense of laches in her answer and

counterclaims, and argues on appeal that a genuine issue of material fact regarding

 12
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

whether Plaintiff’s delay in bringing suit constitutes laches renders erroneous the

trial court’s grant of summary judgment to Plaintiff.

 “The doctrine of laches is designed to promote justice by preventing surprises

through the revival of claims that have been allowed to slumber until evidence has

been lost, memories have faded, and witnesses have disappeared.” Stratton v. Royal

Bank of Can., 211 N.C. App. 78, 88-89, 712 S.E.2d 221, 230 (2011) (internal quotation

marks and citation omitted). A party seeking to invoke the affirmative defense of

laches must show: (1) a delay of time resulting in some change in the condition of the

property or in the relations of the parties; (2) the delay was unreasonable and worked

to the disadvantage, injury, or prejudice of the party seeking to invoke the doctrine

of laches; and (3) the party against whom laches is sought to be invoked knew of the

existence of the grounds for the claim sought to be barred. See MMR Holdings, LLC

v. City of Charlotte, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). The mere

passage of time is insufficient to constitute laches, and the delay necessary to

constitute laches depends upon the facts and circumstances of each case. Id.

 Defendant argues that summary judgment was inappropriate because she has

asserted that Plaintiff’s delay in bringing this action is unreasonable and has

prejudiced her both financially and in her ability to make her defense. Specifically,

Defendant argues that Plaintiff’s delay has (1) prevented her from selling her share

of the property, to which she allegedly made certain improvements during the period

of delay, and (2) made unavailable testimony from John Wood (who is deceased) and

 13
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

closing attorney Price (who does not recall the transaction) that she might use to

defend against Plaintiff’s claim. While conceding that it knowingly delayed bringing

the action for more than eight years, Plaintiff argues that Defendant’s allegations of

prejudice are insufficient to prevent summary judgment because (1) the property has

allegedly increased in value during the period of the delay, (2) the alleged

improvements cost little, and (3) Defendant lived on the property rent-free during the

period of the delay.

 We are unpersuaded by Plaintiff’s arguments, and agree with Defendant that

there exist genuine issues of material fact as to whether Defendant suffered prejudice

because of Plaintiff’s delay in bringing suit. The factfinder must accordingly decide

at trial whether such prejudice, if proven, allows Defendant to invoke the doctrine of

laches to bar Plaintiff’s cause of action. See Cieszko v. Clark, 92 N.C. App. 290, 298,

374 S.E.2d 456, 461 (1988) (holding that where “issues of fact remain as to whether

plaintiffs’ delay in bringing this action was unreasonable and whether defendants

were prejudiced by the delay[,]” summary judgment was improper).

 “Summary judgment provides a drastic remedy and should be cautiously used

so that no one will be deprived of a trial on a genuine, disputed issue of fact. The

moving party has the burden of clearly establishing the lack of triable issue, and his

papers are carefully scrutinized and those of the opposing party are indulgently

regarded.” Koontz v. City of Winston-Salem, 280 N.C. 513, 518, 186 S.E.2d 897, 901

(1972). Given the drastic nature of the judgment here appealed from, we conclude

 14
 U.S. BANK NAT’L ASS’N V. WOOD

 Opinion of the Court

that the trial court erred by granting Plaintiff summary judgment, and remand to

the trial court to require Plaintiff to prove that it is entitled to quiet title to the real

property, and to give Defendant the opportunity to prove otherwise, at trial.

 III. Conclusion

 Because (1) Defendant’s second, third, and fourth issues presented and her

appeal from the trial court’s 6 June 2018 order on her Rule 52 motion concern the

trial court’s findings of fact and conclusions of law underpinning its ultimate decision

to grant Plaintiff summary judgment on its claim to quiet title to the property and (2)

we disregard all but the trial court’s ultimate decision on an appeal from an order

granting a motion for summary judgment, we dismiss those aspects of Defendant’s

appeal. But because Plaintiff has not shown that there exist no genuine issues of

material fact regarding its claim to quiet title via the doctrine of equitable

subrogation, we conclude that the trial court erred by granting Plaintiff’s motion for

summary judgment on that claim in its 1 May 2018 order, and we reverse that ruling

and remand to the trial court for further proceedings consistent with this opinion.

 DISMISSED IN PART AND REVERSED AND REMANDED IN PART.

 Judge DIETZ concurs.

 Judge MURPHY dissents by separate opinion.

 15
 No. COA18-1259 – US Bank Nat’l Ass’n v. Wood

 MURPHY, Judge, dissenting.

 I respectfully dissent from the Majority as it is not within our authority to

expand the doctrine of equitable subrogation into the context of purchase transactions

like that at issue in this case.

 The Majority correctly notes that there is no controlling authority to support

its decision that equitable subrogation is available in the context of the underlying

agreement in this case. As there is no precedent affirmatively allowing us to apply

the equitable subrogation doctrine in favor of Plaintiff, doing so would allow lenders

to rely upon equitable subrogation in a way in which they previously could not.

However, as our State’s intermediate appellate court, “this Court is not in the position

to expand the law. Rather, such considerations must be presented to our Supreme

Court or our Legislature[.]” Shera v. N.C. State Univ. Veterinary Teaching Hosp., 219

N.C. App. 117, 126, 723 S.E.2d 352, 358 (2012). “This Court is an error-correcting

court, not a law-making court.” Id. at 127, 723 S.E.2d at 358.

 Like the Majority, I would conclude the trial court erred in granting summary

judgement in Plaintiff’s favor. However, I would reverse the trial court’s order and

hold that Defendant is entitled to summary judgment in her favor. The Majority’s

opinion is an expansion of our State’s common law and I respectfully dissent.