C. M. BUCKNER v. UNITED STATES FIRE INSURANCE COMPANY AND THE FEDERAL LAND BANK OF COLUMBIA, COLUMBIA, S. C.

(Filed 18 March, 1936.)

1. **Insurance O a—Insurer paying mortgagee under provisions of mortgage clause held not entitled to subrogation against mortgagor.**

Defendant insurer denied liability to the owner mortgagor of the property because of alleged breach of the arbitration clause of the policy, but paid a sum agreed upon to the mortgagee in discharge of its lia-

bility to the mortgagee under the standard mortgage clause. Under provisions of the policy, insurer took from the mortgagee an agreement subrogating insurer for the amount paid, and assigning to insurer a proportionate part of the mortgage debt. The mortgagor brought this action to have the amount paid to the mortgagee applied on the debt and to have the subrogation agreement between the mortgagee and insurer canceled. *Held:* Agreements in the policy contrary to statutory provisions are void, and the only statutory provision relating to subrogation, N. C. Code, 6437, does not provide that insurer should be subrogated to rights of the mortgagee against mortgagor, and under the facts of this case insurer is not entitled to the subrogation claimed upon any equitable principle, and insurer's subrogation receipt from the mortgagee is not valid or binding as against the owner mortgagor.

**2. Insurance P c—Provision of policy providing time within which action should be brought held not applicable to this action.**

Insurer denied liability to the owner mortgagor, but paid a sum agreed to the mortgagee in discharge of its liability under the standard mortgage clause of the policy, and took from mortgagee a subrogation receipt as against the owner mortgagor. The owner mortgagor brought this action to have the sum paid applied to the mortgage debt and to have the subrogation agreement canceled. *Held:* The provision of the policy prescribing the time within which action on the policy must be brought has no application, plaintiff's action being an independent action to have the proceeds of the policy applied upon the debt under the provision of the policy giving him the right to direct such application of the proceeds.

**3. Insurance O a—**

Upon paying the loss by fire, insurer is entitled to subrogation to the rights of insured against the third person tort-feasor causing the loss, to the extent of the amount paid, both by provision of statute, N. C. Code, 6437, and under equitable principles.

APPEAL by defendant U. S. Fire Insurance Company from *Oglesby, J.,* and a jury, at Regular December Term, 1935, of BUNCOMBE. No error.

This was a civil action, tried before his Honor, John M. Oglesby, judge presiding, and a jury, at the Regular December, 1935, Term for the trial of civil cases in the Superior Court for the county of Buncombe, State of North Carolina. The plaintiff commenced this action against the defendant United States Fire Insurance Company and the Federal Land Bank to have credited $2,292.45 on notes executed by the plaintiff to the Federal Land Bank of Columbia, secured by deeds of trust, which amount of said notes the defendant United States Fire Insurance Company claimed had been assigned to it by way of subrogation.

The United States Fire Insurance Company will hereafter be abbreviated "Insurance Company," and the Federal Land Bank of Columbia, S. C., abbreviated "Land Bank."

C. M. Buckner was the owner and seized in fee simple of 40.57 acres of land in Black Mountain, Buncombe County, N. C. Situated on the

21—209

land was a big house—two and a half story building. Plaintiff made two notes, secured by deeds of trust on said property for the benefit of the defendant Land Bank—one 31 December, 1926, for the sum of $2,500, and one on 29 September, 1928, for the sum of $900.00. There is due on same, including principal, interest, and advances as of 1 April, 1935, $3,972.33.

Terms of the deeds of trust were: "It is covenanted by and between the said parties of the first part, their heirs, executors, or administrators, to insure and to keep insured to the satisfaction of the Federal Land Bank of Columbia all the buildings and improvements now on said premises, the value of which was a factor in determining the amount of the loan secured hereby, against loss or damage by fire or windstorm in such sum or sums as may be required by the Federal Land Bank of Columbia, and in such company or companies as may be approved by the Federal Land Bank of Columbia, its successors or assigns, the loss, if any, to be payable to Federal Land Bank of Columbia as its interest may appear at the time of the loss, and will deliver said policy or policies of insurance to the Federal Land Bank of Columbia, and will promptly pay when due all premiums for such insurance. In case any insured buildings or improvements on said premises are destroyed or damaged by fire or windstorm, *the sum or sums collected from said insurance may, at the option of the said parties of the first part, be applied either to the payment of the note secured by this mortgage,* or, subject to the regulations of the Farm Loan Board, and under the direction of the Federal Land Bank of Columbia, to the reconstruction of the buildings or improvements so destroyed or damaged. . . . (3) And it is further covenanted that if the said parties of the first part, their heirs, executors, administrators, or assigns, *shall fail to procure and maintain said insurance, or if after procuring the same shall fail to pay the premium charged therefor, or shall fail to pay said taxes, liens, judgments, or assessments as herein agreed, then the Federal Land Bank of Columbia, its successors or assigns, may effect said insurance and pay the premium thereon,* as well as any unpaid premiums for an insurance policy procured and deposited by the party of the first part with the party of the second part under the provisions of section 1 hereof, and may also pay said taxes, liens, judgments, or assessments, and the money so advanced for the payment of such insurance premiums, taxes, liens, judgments, or assessments, *shall be added to the mortgage debt and become a part thereof and the repayment of the same, with simple interest at the rate of 6% per annum, from the date of actual payment, and until paid, shall be secured by this mortgage."* (Italics ours.)

The Land Bank, in compliance with the deeds of trust, took out insurance with defendant Insurance Company in the sum of $2,700, on

26 January, 1931, and paid the premium and tacked same to the deed of trust as was provided in same. When the insurance was in full force and effect, on 1 January, 1933, the "big house" was burned to the ground, salvage being only perhaps $100.00.

Plaintiff alleges that he "furnished the proof of the total loss of said dwelling house, insured as aforesaid, to the defendant U. S. Fire Insurance Company and the defendant Federal Land Bank of Columbia, under the terms and conditions of the policy of said fire insurance company, and in the manner and time required for the furnishing of said proof under said policy." This was admitted by defendant Land Bank, and defendant Insurance Company said: "It is true that the plaintiff delivered to the defendant a certain paper writing purporting to be a proof of loss on a dwelling house located in Black Mountain Township, Buncombe County, State of North Carolina."

There was a disagreement between plaintiff and the Insurance Company as to the appraisers, at the same time the plaintiff claiming the full amount of the policy—$2,700. At the instance of the Land Bank the plaintiff selected as an appraiser C. C. Daugherty and the defendant Insurance Company selected Dion A. Roberts. The Insurance Company knew that Daugherty was the appraiser selected by plaintiff. On 28 November, 1933, the appraisers found the "Total sound value $3,675.88," that is the actual cash value of the property when burned and the actual loss and damage by the fire. The defendant Insurance Company paid the defendant Land Bank $2,292.45 and required and took from the Land Bank a "subrogation receipt," in part: "By making payment to the bank as mortgagee, under the terms of the memorandum, after denial of liability to the owner, the company has acquired an interest by subrogation in the note and mortgage, but junior in priority and subject in effect to the right of the bank to be first paid the full amount of its mortgage debt, including all advances permitted and authorized to be made by the terms of the mortgage. Unless otherwise ordered and adjudged by a court of competent jurisdiction or disposed of by an agreement and adjustment between the owner and the company, the bank will assign without recourse the note and mortgage to the company when the amount due it has been paid in full, provided that in the meantime the owner has not contested the denial of liability and been sustained therein by the court, in which event the funds will be credited on the remaining unpaid principal of the indebtedness."

The following is in the policy of the defendant Insurance Company: "It is hereby further understood and agreed that the undersigned company, whenever it shall claim that as to any mortgagor or owner whose property is insured under this policy no liability for any loss exists, or

though admitting its liability therefor, it shall dispute the amount thereof as claimed by any mortgagor or owner, will pay to the bank the amount of the loss, the same not to exceed the amount covered by its schedule policy, and thereafter the company will at once be legally subrogated to all the rights of the bank and to all the securities held as collateral to the mortgage debt to the extent of such payment, or at the company's option it may pay to the bank the whole principal due or to grow due on the mortgage debt, with interest, and shall thereupon receive a full assignment and transfer of the note and mortgage and all other securities held as collateral to the mortgage debt, but no such subrogation shall impair the right of the bank to recover the full amount of its mortgage debt."

The issues submitted to the jury and their answers thereto were as follows:

"1. Were the premises of the plaintiff C. M. Buckner insured by the defendant United States Fire Insurance Company, for the benefit of the said Buckner and the Federal Land Bank of Columbia, Columbia, S. C., as their separate interests might appear, as alleged in the complaint, and, if so, was said dwelling described in the complaint destroyed by fire, as alleged? Ans.: 'Yes.'

"2. If so, was there an appraisal and award between the Federal Land Bank of Columbia and the defendant United States Fire Insurance Company made in accordance with the terms and provisions of said policy? Ans.: 'Yes.'

"3. What sum, if any, is plaintiff C. M. Buckner entitled to recover of United States Fire Insurance Company and defendant The Federal Land Bank of Columbia? Ans.: '$2,292.45.' "

The court below rendered judgment on the verdict. The defendant Land Bank did not appeal. The defendant Insurance Company made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*W. E. McLean, Max E. Ramsey, and J. W. Haynes for plaintiff.*
*R. R. Williams for United States Fire Insurance Company.*

CLARKSON, J. The question involved: Is the plaintiff mortgagor, in an independent action, under mortgagee loss clause, entitled to have the sum of $2,292.45 fire loss paid by defendant Insurance Company to defendant Land Bank, under the policy of insurance in defendant Insurance Company, credited upon his indebtedness of $3,972.33, due as of 1 April, 1935, to defendant Land Bank? We think so, under the facts and circumstances of this case.

The prayer of plaintiff is as follows: "(1) That the defendant U. S. Fire Insurance Company be required to cancel and deliver any agreement it may have entered into by it and its codefendant Federal Land Bank of Columbia, attempting to assign any interest of the plaintiff in his notes and his farm given as security for the same; (2) that the Federal Land Bank of Columbia be required to credit the principal sum of the note of the plaintiff described in the deed of trust in the amount of $2,292.45, as of the date of 28 November, 1933; (3) for such other and further relief as the plaintiff may be entitled herein."

In *Bank v. Insurance Co.,* 187 N. C., 97 (102), citing a wealth of authorities, it is said: "With respect to the rights of the mortgagee under the standard mortgage clause, it is the generally accepted position that this clause operates as a separate and distinct insurance of the mortgagee's interest, to the extent, at least, of not being invalidated by any act or omission on the part of the owner or mortgagor, unknown to the mortgagee; and, according to the clear weight of authority, this affords protection against previous acts as well as subsequent acts of the assured." *S. c.,* 188 N. C., 747 (751); *Bank v. Insurance Assn. (Hager case),* 203 N. C., 669; *Mahler v. Ins. Co.,* 205 N. C., 692; *Stockton v. Ins. Co.,* 207 N. C., 43.

This is an independent civil action, instituted in the Superior Court of Buncombe County, 8 September, 1934, wherein the plaintiff mortgagor seeks to have the fire loss under the policy of insurance paid by the defendant Insurance Company to its codefendant, the Land Bank, credited upon his notes given to the defendant Land Bank.

In the policy issued by defendant Insurance Company is the following: "Does insure the Federal Land Bank of Columbia and legal representatives, to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality within a reasonable time after such loss or damage," etc.

Under the contract plaintiff elected that the $2,292.45 be credited on his deeds of trust to the Land Bank, and brought this action for that purpose. The property burned was considered by plaintiff to be worth far above the appraisal. The total sound value by the appraisers was fixed at $3,675.58. The premium paid was $48.60 a year for amount of insurance. From the record we are unable to understand by what legerdemain the Insurance Company paid the Land Bank only $2,292.45 under the insurance contract—which was for $2,700 in case of loss. We will pass over the questions of waiver and breach of contract on the part of defendant Insurance Company. It may be noted that plaintiff accepted the reduced amount and elected to sue and have the amount

credited on his deeds of trust. We will consider the right on the part of the Insurance Company to set up the subrogated receipt. There is one thing fatal to the Insurance Company's defense—it relies on the form of Standard Policy, N. C. Code, 1935 (Michie), sec. 6437.

In *Johnson v. Ins. Co.,* 201 N. C., 362 (363-4), it is said: "These stipulations and provisions are included in the policies by virtue of statutory requirements, and are valid in all respects. *Midkiff v. Ins. Co.,* 197 N. C., 139, 147 S. E., 812; *Greene v. Ins. Co.,* 196 N. C., 335, 145 S. E., 616; *Bank v. Ins. Co.,* 187 N. C., 97, 121 S. E., 37; *Black v. Ins. Co.,* 148 N. C., 169, 61 S. E., 672. In the last cited case, referring to the stipulations and provisions included in a policy of fire insurance, as required by C. S., 6437, it is said: 'They are inserted in the policy, not by the company or by the plaintiff, but by the statute. To fail to give them force and effect is to nullify the statute.' These stipulations and provisions are included in the policies, and unless waived as provided therein, must and will be enforced."

A provision in the policy of defendant Insurance Company is as follows: "It is understood and agreed where the printed conditions of this policy are in conflict with the conditions of the standard fire and lightning policy of any State or territory where this contract is to be performed, then and in that event the standard policy of such State or territory shall control and govern the construction of the printed portion of this policy," etc.

The only subrogation clause we can find in the Form of Standard Policy, in section 6437, *supra,* is the following: "Subrogation—This company may require from the insured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this company." This has been held to be an equitable right independent of the statute. *Cunningham v. R. R.,* 139 N. C., 427 (434).

The defendant Insurance Company has put in the policy a new right, contrary to the standard policy. We do not think under the terms of its policy or on any equitable principle that its subrogation receipt is valid or binding on plaintiff on the facts and circumstances of this case.

The policy period contended by defendant Insurance Company for bringing this action does not apply on this record. This is an independent action, brought by plaintiff against the Land Bank to have the amount of insurance paid it by the Insurance Company credited on its deeds of trust, in accordance with his contract with the Land Bank. This action was brought immediately when plaintiff found that this had not been done.

On this record the exclusion of evidence on the part of the Insurance Company by the court below is not material.

The plaintiff, by the amount being tacked on to his debt, under his contract with the Land Bank, paid the insurance policy. The plaintiff had no notice of this new right of subrogation put in the policy by the Insurance Company—contrary to the statute—as the policy was left with the Land Bank. The Land Bank's interest in the policy, under its contract with plaintiff, is the "loss, if any, to be payable to Federal Land Bank of Columbia, as its interest may appear at the time of the loss."

In Richards on the Law of Insurance (4th Ed.), p. 75, part sec. 52, is the following: "A corollary incident to the doctrine of indemnity is the right of subrogation. Upon paying the loss under a fire or marine policy, the insurer becomes subrogated *pro tanto* to such rights and remedies as the insured may have against third persons who are primarily liable to him for his damage sustained. The person who has caused the loss is said to (be) the one primarily liable."

This is the right given the Insurance Company under section 6437, *supra*—"Subrogation." An insurer, on paying a loss, is subrogated to the insured's claim against the wrongdoer causing the loss. *Cunningham & Hinshaw v. S. A. L. Ry. Co., supra; Fidelity Ins. Co. v. A. C. L. R. Co.,* 165 N. C., 136; *Powell & Powell v. Wake Water Co.,* 171 N. C., 290; *Lumbermen's Mut. Ins. Co. v. Sou. Ry. Co.,* 179 N. C., 255.

N. C. Code, 1935 (Michie), sec. 446, provides that all actions must be prosecuted in the name of the real party in interest. "But this section does not authorize the assignment of a thing in action not arising out of contract." Held, that if the exception in the section operated to prevent a fire insurance company, on paying a loss, from suing the one whose negligence caused the loss, it was repealed by Laws 1899, ch. 54, sec. 43, which provides that the insurance company should be subrogated, to the extent of the payment by it, to all right of recovery by assured. *Hamburg-Bremen Fire Ins. Co. v. A. C. L. R. Co.,* 132 N. C., 75. See subrogation clause now in the Standard Policy, sec. 6437, *supra.*

"But where the mortgagor has any interest in the policy, either by payment of premiums or by agreement with the mortgagee, then there will be no subrogation in favor of the insurers, for the latter takes only such rights as the assured can give." Richards, *supra,* p. 80, part sec. 53.

Fire insurer paying insurance to mortgagee under mortgage clause held not entitled to be subrogated *pro tanto* to right of mortgagee against insured mortgagors. *Atlantic Joint Stock Land Bank of Raleigh v. Farmers Mut. Fire Ins. Assn. of N. C.,* 203 N. C., 669 (*Hager case*).

We see no error in the charge. On the entire record we see no prejudicial or reversible error.

No error.