79 S.E.2d 185 (1953)
238 N.C. 589
WINKLER
v.
APPALACHIAN AMUSEMENT CO.
No. 310.
Supreme Court of North Carolina.
November 25, 1953.
*189 Deal, Hutchins & Minor, Winston Salem, and Wade E. Brown, for plaintiff, appellant.
Scott, Collier & Nash, Statesville, and Trivette, Holshouser & Mitchell, North Wilkesboro, for defendant, appellee.
PARKER, Justice.
The defendant contends that the court was correct in nonsuiting the plaintiff on these grounds: (1) There was not sufficient evidence of actionable negligence to carry the case to the jury; (2) that the language of paragraphs 3 and 9 of the lease relieved the defendant from liability for damages by fire, no matter if caused by its own negligence; and (3) that the language of paragraph 6 of the lease required the plaintiff to keep the building fully insured in order to protect the defendant, even against its own negligence.
In every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to use reasonable diligence to treat the premises demised in such manner that no injury be done to the property, but that the estate may revert to the lessor undeteriorated by the wilful or negligent act of the lessee. The lessee's obligation is based upon the maxim sic utere tuo ut alienum non laedas. The lessee is not liable for accidental damage by fire; but he is liable if the buildings are damaged *190 by his negligence. Moore v. Parker, 91 N.C. 275; Hollar v. Southern Bell Telephone & Telegraph Co., 155 N.C. 229, 71 S.E. 316; U. S. v. Bostwick, 94 U.S. 53, 24 L.Ed. 65; 32 Am.Jur., Landlord and Tenant, 669; 51 C.J.S., Landlord and Tenant, § 261, page 904.
Considering the instructions of the manufacturer of the popcorn machine to "never leave machine unattended while in operation"; that the popcorn machine was about two or two and one-half feet high and the wood table on which it was placed was about two feet high and the ceiling of the room in which it was in operation was about seven feet high; that this machine had an open gas flame from holes in a circular burner about two inches below a pan which contained oil and corn; that this machine was hot from popping fifty boxes of corn; that the manager of the theater instructed the 16 year old boy in charge to bring 25 boxes of corn to the front of the theater; that this boy left the machine in operation with the flame burning; that there had been a hole in the ceiling for several months which exposed the composition material of the air duct; that when this boy returned from the front of the theater where he had carried the 25 boxes of corn, the machine was on fire and flames were down next to the hopper and up to the table; that "as a result of the fire coming through the air duct then coming out, breaking through the drapes the fire just rode up the side of the wall of the dressing room * * * and the fire seemed to jump up the side of the wall and on to the balcony," we are of the opinion, interpreting this evidence in the light most favorable to the plaintiff, and giving to him the benefit of every inference which the testimony fairly supports, as we are required to do on a motion for nonsuit, there was sufficient evidence of actionable negligence for the jury to consider.
The defendant contends that the language of paragraphs 3 and 9 of the lease relieved the defendant from liability for damages by fire, no matter if caused by its own negligence, and in support of its contention makes these points. That paragraph 9 of the lease of September 14, 1938 stipulates that except in case of fire and other casualty and ordinary wear and tear the building shall be delivered up at the expiration of the lease in as good order as at present; and paragraph 3 of this lease says that the lessee shall make necessary repairs to the inside of the building but excludes damages caused by fire, as set forth in paragraph 6. That these provisions of the lease clearly show that the lessors should restore the building destroyed by fire regardless of the cause of the fire. That the plaintiff in March 1950 agreed to replace the building suitable for occupation as a first-class theater, and received from the defendant the sum of $17,250, and is now estopped to deny that the original lease did not contemplate restoration by the plaintiff in the event of defendant's negligence and is barred from maintaining this action by reason of settlement, accord and satisfaction. That the provision of paragraph 6 that the plaintiff should carry insurance to the full insurable value of said building shows the intention of the parties that the lessors should restore the building damaged by fire, regardless of its cause.
These contentions require us to determine whether the language in the instant lease is clear and explicit that the parties intended that the lessee should be relieved of liability for damage by fire caused by its actionable negligence, if the jury should find the defendant guilty of actionable negligence.
Contracts for exemption from liability for negligence are not favored by the law, and are strictly construed against the party asserting it. The contract will never be so interpreted in the absence of clear and explicit words that such was the intent of the parties. Hill v. Carolina Freight Carriers Corp., 235 N.C. 705, 71 S.E.2d 133, where the authorities are cited.
The first question involved is: Whether the words in the lease in paragraph 9, "the lessees agree that they will, at the expiration of this lease, deliver up and return possession of the premises to the lessors in as good order, repair and condition as at present, ordinary wear and tear excepted, and damage by fire * * * excepted," *191 and the words in paragraph 3 "the lessees * * * shall, at their own cost and expense, make any and all repairs that may be necessary inside the portion of the building hereby demised, excepting in case of destruction or damage by fire", exempt the defendant from liability for damage by fire caused by its actionable negligence, if there was such actionable negligence on its part. Similar words have been used in leases for many years to relieve the lessee from any liability caused by accidental fires, or fires caused by the wrongful act of another. Did these words mean that the lessee was to be exculpated from a fire which was the result of its own negligence? Such a concession would scarcely be looked for in a contract between business men. If the parties intended such a contract, we would expect them to so state in exact terms. It would be natural for the lessee who had contracted to keep up repairs, to desire to escape liability for purely accidental fires and for the lessor to be willing to grant that relief, but it would not be natural that the lessor would be willing to release the lessee from damage caused by its own active negligence. In our opinion, the words in paragraphs 9 and 3 of the lease do not exempt the defendant from liability for fire damage, if caused by its actionable negligence.
There seems to be sound authority to support our position. In 32 Am.Jur., Landlord and Tenant, p. 669, it is said: "A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term he shall yield possession `subject to loss by fire'"citing Brophy v. Fairmont Creamery Co., 98 Neb. 307, 152 N.W. 557, L.R.A.1918A, 367; Carstens v. Western Pipe & Steel Co., 142 Wash. 259, 252 P. 939. The cases unquestionably support the text. The headnote in Cerny Pickas & Co. v. C. R. Jahn Co., 347 Ill.App. 379, 106 N.E. 2d 828 correctly summarizes the decision in these words: "Lease providing, among other things, that lessee is to return premises in good repair and condition at termination, loss by fire excepted, and that lessee is to keep all improvements in good repair, injury by fire or other causes beyond lessee's control excepted, did not expressly or impliedly exempt lessee from liability for alleged negligence causing fire or for alleged violation of positive duty imposed by fire ordinances." The defendant relies upon General Mills v. Goldman, 8 Cir., 184 F.2d 359, 374, which adopted a different view. However, that was a three-man court, and Sanborn, C. J., wrote a vigorous dissenting opinion. The opinion of the majority of the Court seems to have been largely affected by the fact that the lessor had fire insurance. In dealing with this point Sanborn, C. J., said: "If the defendant was negligent as the jury found it was, it became indebted to the owners of the leased premises, on the day the building was destroyed, to the extent of $142,500, regardless of whether the building was then covered by insurance or not. That the insurer is entitled to recoup its loss out of what the defendant owes the plaintiff for having negligently destroyed the insured building, is, in my opinion, of no legal concern to the defendant. Evans v. Chicago, Milwaukee & St. Paul Railway Co., 133 Minn. 293, 158 N.W. 335, 336." Kansas City Stock Yards Co. v. A. Reich & Sons, Mo.Sup., 250 S.W.2d 692 cited by the defendant has different facts. In that case the contract exempted the tenant from liability, if the premises were destroyed by fire, in consideration for increased rental with which landlord was to purchase insurance.
The second question involved is whether the words in paragraph 6 that the lessor shall keep the building insured to the extent of its full insurable value, exculpates the defendant from liability for fire damage caused proximately by its negligence, if there was such.
Upon paying a loss by fire, the insurer is entitled to subrogation to the rights of insured against the third person tort feasor causing the loss, to the extent of the amount paid, both by the provisions of G.S. § 58-176 and under equitable principles. Buckner v. United States Fire Ins. Co., 209 N.C. 640, 184 S.E. 520; Lumberman's Mut. Ins. Co. v. Southern R. Co., 179 N.C. 255, 102 *192 S.E. 417; Powell & Powell v. Wake Water Co., 171 N.C. 290, 88 S.E. 426. To use the language of Sanborn, C. J., supra, that the insurer is entitled to recoup its loss out of what the defendant owes the plaintiff for having negligently destroyed the insured building is of no legal concern to the defendant.
In our opinion the language in the instant lease does not expressly or impliedly exempt the defendant from liability for any damage by fire to the demised premises caused proximately by its negligence.
The defendant further contends that under the new lease of March 3, 1950, the plaintiff was paid $17,250 by the defendant, and is now estopped to deny that the original lease did not contemplate restoration by the plaintiff in the event of defendant's negligence, and is barred from maintaining this action by reason of settlement, accord and satisfaction.
This contention based upon testimony elicited by the defendant over the plaintiff's objection, and his exceptions thereto, form the basis of his assignment of errors Nos. 1 and 2. This new lease agreement embodies a contract between the plaintiff and the defendant; it forms the basis of a defense of the defendant; it is clearly not collateral, and the best evidence rule applies. It was error to admit it. Chatham v. C. C. Disher Chevrolet Co., 215 N.C. 88, 1 S.E.2d 117; Liberty Chair Co. v. Crawford, 193 N.C. 531, 137 S.E. 577, 51 A.L.R. 1496; Mahoney-Jones Co. v. Osborne, 189 N.C. 445, 127 S.E. 533; Ledford v. Emerson, 138 N.C. 502, 51 S.E. 42; Stansbury N. C., Evidence p. 415. The defendant states in its brief that if this Court decides that this evidence is incompetent, it is not reversible error for the facts will be brought out at any future hearing. The answer to that is twofold. First, the entire lease is not before us so that we can determine all its terms. On page 33 of the Record the plaintiff said he received $15,000 under this agreement, and under another agreement $2,250, so apparently there were two agreements subsequent to the fire. Second, nowhere in this testimony does it appear that by this new lease the plaintiff released the defendant from liability for fire damage caused proximately by its negligence. The defendant has not pleaded estoppel as a defense. Further, estoppel, even if pleaded, settlement, accord and satisfaction are affirmative defenses, and ordinarily a nonsuit will not be allowed in favor of the party on whom rests the burden of proof. The evidence admitted by the court, even if competent, does not establish the truth of these affirmative defenses as a matter of law to bring the case within the one exception to the general rule. Howard v. Bingham, 231 N.C. 420, 57 S.E.2d 401; MacClure v. Accident & Casualty Ins. Co., 229 N.C. 305, 49 S.E.2d 742; Hedgecock v. Jefferson Standard Life Ins. Co., 212 N.C. 638, 194 S.E. 86.
The next question presented: Did the court err in excluding evidence offered by the plaintiff tending to show that the fire insurance companies had not paid plaintiff's full loss, and, therefore the plaintiff was not divested of his cause of action by subrogation? The answer is Yes.
The plaintiff offered in evidence the lease of September 14, 1938, which contained the following provision "the lessors agree to keep said theater buildings and equipment hereby leased insured to the extent of its full insurable value in some reliable insurance company." This evidence was competent to rebut any inference or contention to be drawn from the lease, that the plaintiff had been paid in full. If the plaintiff had been paid in full by the insurance companies, the insurance companies by right of subrogation would become entitled to the entire recovery, if any, and would be the real party in interest. Burgess v. Trevathan, 236 N.C. 157, 72 S.E.2d 231, where the cases are cited.
The plaintiff's assignment of error No. 4 that the trial court erred in sustaining the motion for nonsuit is good.
For the reasons stated above the case should be submitted to a jury, and the ruling to the contrary is
Reversed.